# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2009AP284-D |
| COMPLETE TITLE: | |

In the Matter of Disciplinary Proceedings
Against Alan D. Eisenberg, Attorney at Law:

Office of Lawyer Regulation,
      Complainant-Respondent,
   v.
Alan D. Eisenberg,
      Respondent-Appellant.

DISCIPLINARY PROCEEDINGS AGAINST EISENBERG

| | |
|---|---|
| OPINION FILED: | May 2, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 6, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there was a brief filed by *Alan D. Eisenberg,* pro se, and oral argument by *Alan D. Eisenberg*.

For the Office of Lawyer Regulation, there was a brief filed by *Paul W. Schwarzenbart* and oral argument by *Paul W. Schwarzenbart*.

2013 WI 37

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2009AP284-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings against Alan D. Eisenberg, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant-Respondent,**

  **v.**

**Alan D. Eisenberg,**

        **Respondent-Appellant.**

**FILED**

**MAY 2, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. This is the sixth disciplinary proceeding involving Attorney Alan D. Eisenberg. In this matter Attorney Eisenberg has appealed from the report of the referee, Attorney John R. Decker, in which the referee recommended that the period of ineligibility for Attorney Eisenberg to petition for reinstatement from the prior revocation of his license to practice law be extended for a period of two years, and that Attorney Eisenberg be ordered to pay the full costs of this

disciplinary proceeding, which were $27,689.29 as of November 19, 2012.

¶2 After fully reviewing this matter, we reject Attorney Eisenberg's arguments on appeal. We accept the referee's findings of fact and agree that those facts provide clear, satisfactory, and convincing evidence that Attorney Eisenberg committed five violations of the Rules of Professional Conduct for Attorneys. We further agree with the referee that those violations require the imposition of an additional two-year suspension, which shall run consecutive to the existing five-year period in which Attorney Eisenberg is prohibited from petitioning for the reinstatement of his license to practice law in Wisconsin due to the prior revocation of his license. We also determine that Attorney Eisenberg should be required to pay the full costs of this proceeding.

¶3 Attorney Eisenberg was admitted to the practice of law in this state in 1966. He has been the subject of professional discipline on five prior occasions. In 1970 this court suspended Attorney Eisenberg's license for a period of one year due to his unprofessional conduct. In re Disciplinary Proceedings Against Eisenberg, 48 Wis. 2d 364, 180 N.W.2d 529 (1970) (Eisenberg I). In 1988 we imposed a two-year suspension for a lengthy list of ethical violations, including multiple false statements. In re Disciplinary Proceedings Against Eisenberg, 144 Wis. 2d 284, 423 N.W.2d 867 (1988) (Eisenberg II). In 1996 Attorney Eisenberg received a public reprimand for failing to close out a client trust account and thereby to wrap

up his law practice during the suspension imposed in Eisenberg II. Public Reprimand of Alan D. Eisenberg, No. 1996-3 (Eisenberg III). In 2004 we again suspended Attorney Eisenberg's license for a period of one year for misconduct that included, among other things, directing his staff to fabricate billing records, which he then incorporated into an affidavit that he personally signed, disrupting an administrative hearing with "rude, abusive, controlling, [and] disrespectful" behavior, and entering into a prohibited transaction with a client. In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶¶19 and 24-25, 269 Wis. 2d 43, 675 N.W.2d 747 (Eisenberg IV). Finally, in 2010 we revoked Attorney Eisenberg's license for misconduct in filing and maintaining a frivolous lawsuit that served merely to harass or maliciously injure the opposing party. In re Disciplinary Proceedings Against Eisenberg, 2010 WI 11, 322 Wis. 2d 518, 778 N.W.2d 645 (Eisenberg V). Under this court's rules, Attorney Eisenberg will not be eligible to petition for the reinstatement of his license until April 1, 2015. See SCR 22.29(2) ("A petition for reinstatement of a license that is revoked may be filed at any time commencing five years after the effective date of revocation.").

¶4 The OLR filed its complaint in this matter in February 2009. The proceedings before the referee did not move forward for a period of time given the pendency of the disciplinary proceeding that resulted in the Eisenberg V decision. Attorney Eisenberg subsequently filed two motions to dismiss this matter, but both were denied by the referee. He also filed a motion in

3

this court requesting that Referee Decker be disqualified and that a new referee be appointed to decide the disqualification issue. This court denied his request for the appointment of a different referee to decide the disqualification motion and referred the recusal/disqualification motion to Referee Decker for a decision. The referee subsequently denied that motion. After the passage of a considerable amount of time between sessions of an evidentiary hearing, the referee issued his report and recommendation. Attorney Eisenberg appealed, and oral argument on his appeal was conducted in November 2012.

¶5 The OLR's complaint in this proceeding relates to two separate representations. The referee ultimately found the following facts regarding the underlying matters.

¶6 In the first matter, Attorney Eisenberg represented a man, T.H., regarding the euthanization of a pet dog. Prior to undertaking this representation, Attorney Eisenberg had previously represented a plaintiff dog owner in a civil action against a neighbor, an off-duty police officer who had shot the plaintiff's dog. Attorney Eisenberg had argued on behalf of the plaintiff in that case that the plaintiff dog owner had a legal claim for negligent infliction of emotional distress. This court ultimately ruled in that case that the plaintiff could not state a claim for negligent infliction of emotional distress because such a claim requires that the person seeking compensation must have witnessed the death of a close relative, and under the law of this state a pet dog is considered the personal property of the owner and not a close relative.

4

Rabideau v. City of Racine, 2001 WI 57, 243 Wis. 2d 486, 627 N.W.2d 795. From his work on the Rabideau case, Attorney Eisenberg was aware of the legal categorization of pet dogs as personal property.

¶7 T.H. had formerly been married to S.H., and they had owned a Labrador retriever during their marriage. After T.H. moved out of the family residence and while the divorce proceeding was pending, the dog resided with S.H. and the couple's son, but not with T.H. S.H. and T.H. entered into a marital settlement agreement (MSA), which was ultimately incorporated into the judgment of divorce. In the MSA, T.H. expressly agreed that S.H. would be awarded, inter alia, all "personal belongings and other personal property currently in her possession at the time of the final hearing," and that T.H. was divested of any right or legal interest in any of the property awarded to S.H. This MSA was never modified. The dog was therefore awarded to S.H. in the divorce judgment.

¶8 S.H. had the dog euthanized at a veterinary hospital in August 2000. T.H. learned of this fact a short time later. He then retained Attorney Eisenberg regarding a potential claim.

¶9 Despite his knowledge of the legal characterization of pet animals as personal property and of the terms of the MSA and the divorce judgment, which awarded all personal property in her possession to S.H., Attorney Eisenberg filed a large-claim civil action on T.H.'s behalf on the theory that T.H. was the lawful owner of the dog. Although the referee found that the initial belief in Attorney Eisenberg's office was that S.H. had been

responsible, with or without her mother's assistance, for the euthanization of the dog, Attorney Eisenberg did not name S.H. as a defendant. Apparently for strategic reasons Attorney Eisenberg named B.S., who was S.H.'s mother and T.H.'s former mother-in-law, as the sole defendant.[1]

¶10 Attorney Eisenberg subsequently claimed that the veterinary hospital had told him that it had been B.S. who (1) had brought the dog to the hospital, (2) had falsely claimed that she was the owner, and (3) had demanded that the dog be euthanized. The referee found that this claim was "incredible and false." Attorney Eisenberg also claimed that S.H. had admitted to him in a later telephone conversation that her mother had been the individual responsible for the euthanization of the dog. The referee also found this to be a "fabrication" by Attorney Eisenberg.

¶11 In April 2001 counsel for B.S. sought to take the deposition of T.H., but was unable to do so because T.H. refused to answer counsel's questions and Attorney Eisenberg refused to instruct T.H. to answer. B.S.'s counsel attempted to resolve the discovery dispute in a telephone call with Attorney Eisenberg, but Attorney Eisenberg continued to refuse to instruct his client to answer. Instead, Attorney Eisenberg

---

[1] The referee described his view of the way in which the lawsuit was structured as follows: "[Attorney] Eisenberg constructed a compelling narrative for the case: vicious, vindictive ex-mother-in-law has the perfectly healthy dog belonging to her ex-son-in-law euthanized. The only problem with the narrative was that it was untrue."

questioned opposing counsel about the facts of the case and then hung up after calling opposing counsel a liar.

¶12 B.S. was forced to bring a motion to compel discovery. Attorney Eisenberg did not appear for the hearing on the motion. Instead, 25 minutes after the scheduled start time for the hearing, Attorney Eisenberg called an associate attorney in his firm who had graduated from law school just one month earlier and instructed her to appear in his stead. Consequently, the court and opposing counsel were forced to wait 35 minutes before the associate reached the courtroom. The circuit court granted the motion to compel and ordered that Attorney Eisenberg pay the opposing side's costs and attorney fees, including the fees for the 35 minutes spent waiting for Attorney Eisenberg or his associate to appear.

¶13 When the deposition of T.H. resumed, B.S.'s counsel presented T.H. with documentation from the veterinary hospital which showed that S.H., not his former mother-in-law, had signed the consent form for the dog to be euthanized. T.H. indicated that he had never seen the form before and acknowledged that it made "everything irrelevant." T.H. also acknowledged that the dog had bitten people in a few incidents over the years and that he had been convicted on a municipal charge of cruelty to animals for an incident involving the dog.

¶14 The circuit court ultimately granted B.S.'s summary judgment motion and dismissed the case. Finding that both T.H. and Attorney Eisenberg had no basis in law or fact to assert that T.H. had any ownership interest in the dog at the time it

had been euthanized, the circuit court also ruled that the action had been frivolous and ordered Attorney Eisenberg and T.H. to pay B.S. the sum of $3,680.70, plus costs. Ultimately, in September 2001 this sanction order was reduced to a judgment in the amount of $3,785.70 against Attorney Eisenberg and T.H., jointly and severally.

¶15 Attorney Eisenberg did not make any payments toward the judgment for a number of years. He initially filed a motion for reconsideration, which was denied. He then filed an appeal, which was dismissed as untimely. Almost five years after the judgment had been entered, Attorney Eisenberg filed a motion to vacate and dismiss the judgment because he wanted "to do certain things financially" and "to move on with certain things in his life." That motion was denied, and the denial was upheld on appeal. Finally, in January 2008, more than six years after the entry of the sanction order and judgment, Attorney Eisenberg tendered a check to B.S. in satisfaction of the judgment.

¶16 On the basis of these facts, the referee concluded that by alleging that T.H. was the "owner" of the dog when T.H. had agreed to relinquish any claim to ownership in the MSA and the divorce judgment, Attorney Eisenberg knowingly advanced a factual position where the basis for doing so was frivolous, in violation of SCR 20:3.1(a)(2).[2] Second, the referee determined

---

[2] SCR 20:3.1(a)(2) states that in representing a client, a lawyer shall not "knowingly advance a factual position unless there is a basis for doing so that is not frivolous; . . . ."

that Attorney Eisenberg had violated SCR 20:3.4(a) and (d)[3] by encouraging his client to make objections to legally proper questions in his deposition, by disrupting the deposition with deceitful and inflammatory representations about the examining attorney, and by opposing a motion to compel discovery in bad faith. Finally, the referee concluded that Attorney Eisenberg's failure to comply with the court's sanction order and judgment for a period of several years constituted a violation of SCR 20:3.4(c).[4]

¶17 The second matter at issue in this disciplinary proceeding involves Attorney Eisenberg's financial arrangement with a nonlawyer in the representation of a claimant in a worker's compensation proceeding. Under the applicable statutes and the rules of the Department of Workforce Development (DWD),

---

[3] SCR 20:3.4(a) and (d) state as follows:

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

. . .

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party; . . . .

[4] SCR 20:3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

nonlawyers are permitted to represent worker's compensation claimants in negotiating settlements with insurers and to appear before an administrative law judge (ALJ) on behalf of a claimant if they meet certain requirements, including obtaining a license from the DWD. Wis. Stat. § 102.17(1)(c). A nonlawyer who does not have the necessary license or meet the requirements must work with a licensed attorney, who represents the claimant. If multiple attorneys have represented a claimant in succession and they are unable to agree on how the fees are to be allocated, it is the ALJ who allocates fees among the various attorneys. When an attorney is involved, the DWD directs fees to be paid only to attorneys. Thus, nonattorney individuals who are not authorized to appear before an ALJ and who work on a worker's compensation matter must have an affiliation with an attorney of record and receive compensation from the attorney.

¶18 J.M.Z. was an unlicensed medical doctor who provided case management and evaluation services for a number of law firms and lawyers. Because he was not authorized to appear before an ALJ in worker's compensation matters, he worked with claimants in such matters in conjunction with licensed attorneys. He apparently referred a worker's compensation claimant, G.M., to a law firm where he worked. The lawyer with whom J.M.Z. worked on such cases subsequently left the firm and started his own firm. J.M.Z. also subsequently left that firm and developed a referral relationship with the lawyer in his new practice. One of the cases that J.M.Z. referred from the prior firm to the lawyer's new firm was G.M.'s case. A dispute,

10

however, developed between J.M.Z. and the lawyer over J.M.Z.'s belief that the lawyer was not paying him the amounts J.M.Z. believed he was owed on referred cases, including G.M.'s worker's compensation case.

¶19 Ultimately, J.M.Z. ceased working with the attorney and developed an association with Attorney Eisenberg. Although J.M.Z. was not a lawyer, Attorney Eisenberg testified in this disciplinary proceeding that J.M.Z. had "pulled" G.M.'s case out of the other lawyer's firm and had brought the case along with him to Attorney Eisenberg's firm. Attorney Eisenberg was then substituted as counsel of record. He testified, however, that "there was almost nothing left that needed to be done" on the case and that "[a]ll my office did was busy work."

¶20 When G.M.'s claim was settled, the prior attorney filed an attorney's lien against the settlement proceeds. According to Attorney Eisenberg, J.M.Z. told Attorney Eisenberg that he wanted to get the money he thought was owed to him. A letter, dated September 4, 2007, which Attorney Eisenberg described as a "letter of protection," was sent under Attorney Eisenberg's handwritten signature to advise the ALJ of Attorney Eisenberg's and J.M.Z.'s claim against the settlement monies under a statutory lien for attorney fees. The September 4, 2007 letter was received by the ALJ the following day. The September 4, 2007 letter described the history of G.M.'s case and its travels through the various law firms. It stated that J.M.Z. had actually done the lion's share of the work on G.M.'s case, much of which had occurred prior to J.M.Z.'s affiliation

11

with Attorney Eisenberg. Although Attorney Eisenberg has acknowledged that his firm was required to do very little work on the case, the final paragraph of the letter argued that his firm should receive the overwhelming majority of the legal fees. That paragraph also describes an agreement between Attorney Eisenberg and J.M.Z. regarding G.M.'s case:

> For the above reasons, it seems most equitable that the Law Offices of Alan D. Eisenberg receive all but $1,000.00 in legal fees and $250.00 in costs, or a net amount of $23,288.29. Please note that the present agreement between Attorney Alan D. Eisenberg and [J.M.Z.] involves a 50/50 split between them once a matter has been adjudicated and settled. This is identical to the former agreement between [J.M.Z.] and [the prior attorney].

¶21 Apparently still upset with the prior attorney, J.M.Z. sent a copy of Attorney Eisenberg's September 4, 2007 letter to the OLR apparently as part of his complaint about the prior attorney. After speaking with J.M.Z. about his arrangements with the various attorneys, an OLR investigator sent a letter to Attorney Eisenberg regarding the investigator's contact with J.M.Z. and Attorney Eisenberg's relationship with J.M.Z. In a subsequent telephone conversation involving the OLR investigator, Attorney Eisenberg and J.M.Z., Attorney Eisenberg denied, contrary to the statement in his September 4, 2007 letter, that there was a fee-splitting agreement between himself and J.M.Z.

¶22 Two days after this telephone conversation, Attorney Eisenberg sent a second version of the "letter of protection" (the September 26, 2007 letter) to the ALJ. The referee found

12

that this September 26, 2007 letter was identical to the first letter, with the sole exception that the final two sentences referring to the 50/50 fee split between J.M.Z. and Attorney Eisenberg and between J.M.Z. and the prior attorney had been deleted. This letter was also received by the ALJ.

¶23 In subsequent communications with the OLR's investigator, Attorney Eisenberg claimed that he had never entered into any fee-splitting agreement with J.M.Z., that he had not dictated the September 4, 2007 letter, that no rough draft of that letter had ever been given to him for review, and indeed that the September 4, 2007 letter had been voided and never sent to the ALJ.

¶24 The referee explicitly and specifically found that Attorney Eisenberg's denial of having entered into a fee-splitting agreement with J.M.Z. and his claim that the September 4, 2007 letter had not been sent to the ALJ were false. The referee further found that, although there indeed had been a fee-splitting agreement, which had been communicated to the ALJ, there was no evidence that fees had actually been split between Attorney Eisenberg and J.M.Z. pursuant to their agreement after its existence had been disclosed to the OLR.

¶25 Based on these facts regarding the representation of G.M. and the resulting OLR investigation, the referee concluded that Attorney Eisenberg had committed two violations of the Rules of Professional Conduct for Attorneys. First, by agreeing to serve as a conduit to share fees that he did not earn with a nonlawyer, and by agreeing to split fees on a 50/50 basis with a

13

nonlawyer, Attorney Eisenberg violated SCR 20:5.4(a),[5] which is enforced via SCR 20:8.4(a).[6] Second, by falsely stating to the OLR that he had never entered into a fee-splitting agreement with J.M.Z. and that his September 4, 2007 letter had never been sent to the ALJ, Attorney Eisenberg violated SCR 22.03(6),[7] which is enforced via SCR 20:8.4(h).[8]

---

[5] SCR 20:5.4(a) states:

(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

(2) a lawyer who purchases the practice of a deceased, disabled, or disappeared lawyer may, pursuant to the provisions of SCR 20:1.17, pay to the estate or other representative of that lawyer the agreed-upon purchase price;

(3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement; and

(4) a lawyer may share court-awarded legal fees with a nonprofit organization that employed, retained or recommended employment of the lawyer in the matter.

[6] SCR 20:8.4(a) says it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . ."

[7] SCR 22.03(6) provides:

In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish

¶26 In his report the referee also commented on Attorney Eisenberg's conduct and demeanor during the disciplinary proceedings before the referee. The referee noted that Attorney Eisenberg gave multiple varying accounts of a number of events, which often tended to minimize his own involvement and to cast blame on others. The referee commented that Attorney Eisenberg had on numerous occasions leveled inaccurate criticisms against the OLR's director and the attorney representing the OLR, even making a false accusation that the OLR's counsel had made a false statement to the referee. The referee found that the statement made by OLR's counsel was supported by deposition testimony and documentary evidence. In addition, the referee stated that Attorney Eisenberg had "attempted to engineer a false picture of the proceedings" by making numerous false claims on the record, including that OLR's counsel and the referee had mocked and laughed at him during the evidentiary hearing. The referee further found that Attorney Eisenberg had leveled untrue and unfair attacks on B.S. in an unsuccessful attempt to discredit her. Moreover, as in other cases, the referee noted that Attorney Eisenberg had repeatedly complained

documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[8] SCR 20:8.4(h) says it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

15

that he was being singled out for harsh treatment by the OLR, going so far as to claim that the OLR was engaged in a "jihad" against him. The referee summarized Attorney Eisenberg's attitude and conduct throughout this disciplinary proceeding as follows: "In sum, [Attorney] Eisenberg refused to acknowledge any fault or wrongdoing whatsoever, and remained accusatory, hostile, and defiant throughout."

¶27 With respect to the appropriate level of discipline, the referee rejected Attorney Eisenberg's argument that the claims against him were de minimis and should not result in any discipline. The referee concluded that Attorney Eisenberg's violations were not based on mere technicalities, but to the contrary, were serious and substantive ethical violations. The referee also concluded that the OLR's request for a six-month extension of the period of ineligibility to seek reinstatement was not sufficiently supported by authority and was insufficient under the facts of this case.

¶28 The referee conducted his own review of prior disciplinary cases and concluded, based on those precedents, that a two-year extension of Attorney Eisenberg's ineligibility to seek reinstatement was a proper level of discipline in this case. As support for this recommendation, the referee discussed a substantial number of prior decisions, including, inter alia, In re Disciplinary Proceedings Against Horvath, 219 Wis. 2d 334, 579 N.W.2d 240 (1998), in which an attorney who had been disciplined on three prior occasions and whose license remained suspended received an additional two-year suspension for

16

repeatedly engaging in deceitful conduct and failing to cooperate in a disciplinary investigation, and In re Disciplinary Proceedings Against Ratzel, 218 Wis. 2d 423, 578 N.W.2d 194 (1998), in which an attorney who had been disciplined on three prior occasions was suspended for two years for making fraudulent claims in litigation and making misrepresentations to the Board of Attorneys Professional Responsibility (BAPR) during its investigation.

¶29 Finally, the referee recommended that Attorney Eisenberg be ordered to pay the full costs of the disciplinary proceeding.

¶30 Attorney Eisenberg has appealed from the referee's report and recommendation. Our consideration of his appeal and our review of the referee's findings of fact, conclusions of law, and sanction recommendation are conducted according to long-established standards. Specifically, we affirm a referee's findings of fact unless we determine them to be clearly erroneous, but we review the referee's conclusions of law on a de novo basis. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We establish the appropriate level of discipline in light of the particular facts of each case, independent of the referee's recommendation, but benefiting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶31 Attorney Eisenberg's appellate brief in this court frames the issue on appeal broadly as whether the referee's recommendation of an additional two years of ineligibility to

petition for reinstatement should be approved and adopted by this court. He does not present any narrower subissues nor does he organize his various contentions about this case into discrete arguments. For the sake of organization, we will separate his various assertions, to the extent possible, into matters of process and matters of substance.

¶32 On the procedural side of the ledger, Attorney Eisenberg levels several criticisms against the referee. First, he points to a number of quotations from the referee's report, in which the referee stated, inter alia, that many of Attorney Eisenberg's statements in this proceeding were willfully false, that Attorney Eisenberg had engaged in "calculated and repetitive efforts to confuse and confound," and that the referee in his decades as a practicing attorney and referee had never encountered "a more evasive, inconsistent, deceitful, and untruthful witness."

¶33 Attorney Eisenberg also complains about an incident where the referee missed a hearing, which then had to be rescheduled. Attorney Eisenberg asserts that this incident required him to sit in pain unnecessarily while waiting with a witness he had brought to the hearing. This incident was also part of Attorney Eisenberg's prior interlocutory disqualification motion in this court.

¶34 Although Attorney Eisenberg points to these facts in his brief and oral argument, he never develops any legal argument from the facts. His previous motion sought disqualification of the referee because of the referee's alleged

18

bias against Attorney Eisenberg, but he does not develop any such argument in his appeal. He cites no legal authority of any sort regarding the standard for disqualifying a judge or referee due to bias. He never explains how the facts that he cites prove that the referee was biased against him under the applicable standard. We therefore will not address this matter further because we will not develop Attorney Eisenberg's legal argument for him.[9]

¶35 Attorney Eisenberg also criticizes the OLR and its retained counsel in this proceeding. First, he implies that the OLR has pursued this and other disciplinary cases against him because of some vendetta. He contends that he has become the "OLR's piñata." With respect to OLR's counsel, he contends that during the evidentiary hearing opposing counsel laughed at and mocked him.

¶36 Attorney Eisenberg also asserts that the OLR has informed him that it is withholding nine more counts of misconduct, which it intends to pursue in the event that he would petition for the reinstatement of his license. Citing

---

[9] We note, however, that the referee's comments about Attorney Eisenberg's conduct and testimony in this proceeding are proper subjects of a referee's report. While Attorney Eisenberg may not like the manner in which the referee described his credibility determinations, Attorney Eisenberg has not presented a single instance in which the referee's comments are inaccurate or are based on something other than the evidence and testimony in this proceeding. Similarly, while the incident with missing a hearing is regrettable, Attorney Eisenberg fails to show how the referee's missing a hearing was directed specifically at him or showed a bias against him.

19

only an unpublished court of appeals opinion in a criminal case that addressed the withholding of requested evidence, Attorney Eisenberg contends that the OLR's failure to pursue those nine additional charges in this proceeding violates his due process rights.

¶37 We find no merit to any of Attorney Eisenberg's complaints regarding the OLR and its counsel as they pertain to this disciplinary proceeding.  We see no evidence that the OLR is pursuing disciplinary cases against Attorney Eisenberg simply because of who he is.  Each of the prior disciplinary cases against Attorney Eisenberg brought by the OLR or its predecessor, BAPR, resulted in findings of misconduct and the imposition of professional discipline by this court.  Pursuing a meritorious case in this instance against Attorney Eisenberg is not an invalid exercise of prosecutorial discretion.

¶38 We further note that in response to Attorney Eisenberg's claim that OLR's counsel had laughed at him and mocked him, the referee indicated that he had not observed any such conduct and that Attorney Eisenberg's claim was false.  The referee cited this claim as one example of Attorney Eisenberg's attempt to "engineer a false picture of the proceedings."

¶39 With respect to the alleged additional counts that the OLR is purportedly withholding until Attorney Eisenberg files a petition for reinstatement, we note that Attorney Eisenberg has not provided factual support for his claim.  Even if his contention is accurate, any due process claim regarding the timeliness of prosecuting those claims would relate only to

those claims, if they were ever pursued. Attorney Eisenberg never explains how any delay in prosecuting those other nine claims, which are not before this court, affects his due process rights with respect to the five counts of misconduct that the OLR has pursued and that are before the court in this proceeding. There simply can be no due process violation in this case due to the timeliness of other charges of professional misconduct that have not been alleged in this case.[10]

¶40 Attorney Eisenberg's arguments regarding the substance of the referee's report are similarly without merit. He pursues essentially two substantive arguments in his brief. First, he merely repeats his version of the facts. For example, he again claims that he was unaware of the language in the September 4, 2007 "letter of protection," that he signed the letter in haste, and that he withdrew the letter three weeks later. He therefore implies that he never actually had a fee-splitting agreement with J.M.Z., as the letter states. His factual claims, however, including his assertions regarding the fee-splitting letter of protection, were expressly rejected by the referee. Attorney

---

[10] Indeed, it is interesting to note that Attorney Eisenberg also criticizes the OLR for continuing this disciplinary proceeding after his license was revoked in Eisenberg V. In re Disciplinary Proceedings Against Eisenberg, 2010 WI 11, 322 Wis. 2d 518, 778 N.W.2d 645. He implies that there was no valid reason for continuing this disciplinary proceeding and that the only reasons for the OLR to move forward with this case were to harass him and to increase the amount of costs he will have to pay. Given these concerns, it is an irreconcilable conflict also to claim that the OLR is violating his rights by choosing not to prosecute additional misconduct charges against him in this proceeding.

Eisenberg is obligated to demonstrate how the referee's factual findings were clearly erroneous. He has not even attempted to do so. Simply repeating his version of the facts in the face of the referee's clear and unambiguous adverse findings of fact has no appellate worth.

¶41 After conducting our review, we find no basis to conclude that the referee's findings of fact are clearly erroneous, with one minor exception that has no bearing on whether Attorney Eisenberg engaged in professional misconduct. The referee expressly found that the September 4, 2007 and September 26, 2007 letters signed by Attorney Eisenberg were identical, except for the deletion of the final two sentences, which set forth the fee-splitting agreements between J.M.Z. and Attorney Eisenberg and between J.M.Z. and the previous attorney. While much of the earlier parts of the two letters are the same, there are some other differences, although those differences are not relevant to the fee-splitting charge at issue in this disciplinary case. Thus, with the exception of the finding that the two letters were identical but for the deletion of the last two sentences, we accept and adopt the referee's findings of fact.

¶42 The other substantive argument that can be gleaned from Attorney Eisenberg's brief and oral argument is that any violations in these two representations were de minimis, and therefore should not be treated as violations. First, whether the violations were insubstantial would bear on the level of discipline that should be imposed, not on whether the findings

22

of fact demonstrate that Attorney Eisenberg committed the rule violations. Second, we disagree that the violations charged in this proceeding are de minimis. Alleging and pursuing a frivolous claim and then engaging in bad faith tactics designed to frustrate the opponent's discovery and defense of that claim are serious ethical violations. Moreover, while Attorney Eisenberg did ultimately satisfy the cost judgment imposed on him for the frivolous claim against B.S. in an amount that was substantially greater than the original judgment, his refusal to pay that cost judgment for years signified a cavalier disregard for the circuit court's orders. Finally, agreeing to split fees with a nonlawyer and then lying to investigators about that agreement is clearly more than a technical violation.

¶43 We note that while Attorney Eisenberg attempts to downplay the seriousness of his misconduct, he has not explicitly argued that the facts as found by the referee do not satisfy the elements of the charges against him. Our review of the matter leads us to agree with the referee that the facts of this case clearly and convincingly support a conclusion of misconduct on each of the five counts at issue.

¶44 We turn now to the question of the proper level of discipline. Of great importance to this issue is the fact that this is the sixth time that Attorney Eisenberg has been the subject of professional discipline due to misconduct. Moreover, there is a recurring pattern of behavior and disregard for the rules that govern the privilege of practicing law in this state. This is not the first time that Attorney Eisenberg has been

23

found to have commenced sham or frivolous litigation. It is also not the first time that he has provided false statements to the regulatory authorities investigating his conduct. Indeed, even during the course of this disciplinary proceeding, the referee found that Attorney Eisenberg had repeatedly changed his story on several issues in an apparent attempt to avoid discipline for his misconduct. The referee found that his claims were nothing more than fabrications. Further, as we noted above, the misconduct we have found in this case is serious and represents a flagrant misuse of the law and the position of attorney for self-serving ends. Finally, Attorney Eisenberg has not demonstrated an acceptance of responsibility or remorse for his misconduct. To the contrary, as the referee pointed out, he has attempted to place blame on everyone else, including the OLR's counsel and the referee, and to minimize the seriousness of his misconduct. We therefore agree with the referee that our prior precedents and the particular facts of this case warrant imposing a two-year suspension, which shall run consecutive to the period of ineligibility required by the prior revocation of Attorney Eisenberg's license to practice law in this state.[11]

---

[11] We have on prior occasions extended the ineligibility of a previously revoked or suspended attorney to petition for reinstatement upon a finding that an additional period of suspension is warranted by the attorney's further misconduct. See, e.g., In re Disciplinary Proceedings Against Weber, 219 Wis. 2d 342, 345, 579 N.W.2d 229 (1998) (imposing additional six-month period of ineligibility on attorney whose license had been previously revoked); see also In re Disciplinary Proceedings Against Edgar, 2003 WI 49, ¶13, 261 Wis. 2d 413, 661

24

¶45 Finally, we address the issue of the costs of this proceeding. Attorney Eisenberg submitted two letters in response to the OLR's initial statement of costs, in which he made unsupported claims regarding the OLR's attorney fees and the referee's fees. He asked for mediation or arbitration regarding the OLR's fees or for an evaluation of the OLR's and the referee's fee invoices by a third party. A portion of Attorney Eisenberg's brief in this court and a significant part of his oral argument was also directed to arguing that he should not have to pay any costs. However, when the OLR filed its supplemental statement of costs after oral argument, Attorney Eisenberg did not lodge any objection.

¶46 In addition to claiming that the referee's and the OLR's fees were inflated, Attorney Eisenberg also contends that there was no need for much of the OLR's and the referee's work because the OLR claimed that his defenses to the charges in this proceeding were frivolous. He claims that he offered to voluntarily refrain from ever seeking the reinstatement of his license, which would have eliminated the need for any further fees, but the OLR refused his offer. He further states that he has no financial resources to pay any cost award.

¶47 The general policy of this court, absent extraordinary circumstances, is to impose the full costs of a disciplinary proceeding on the attorney whose misconduct necessitated the

---

N.W.2d 817 (imposing one-year suspension to run consecutive to the end of a prior two-year suspension).

proceeding. SCR 22.24(1m). An attorney who objects to a statement of costs filed by the OLR must state, with specificity, the bases for the objection and must also provide an amount that he/she believes to be reasonable under the circumstances. SCR 22.24(2). Attorney Eisenberg has not complied with either requirement. He makes only broad, unsupported assertions and never indicates what he believes to be a reasonable amount of costs. Moreover, to the extent that Attorney Eisenberg contends that some expenses incurred by the OLR's counsel or the referee were unnecessary because the OLR claimed his defenses were without merit, we note that Attorney Eisenberg continued to litigate this matter aggressively, cross-examining the OLR's witnesses, calling his own witnesses and appealing the referee's report and recommendation to this court. One cannot litigate aggressively and then criticize the opposing party for doing the same. We therefore find no extraordinary circumstances that would warrant deviating from our general policy. To the extent that Attorney Eisenberg contends that he is financially unable to pay the costs of this proceeding, he has provided no proof of his financial situation. He may provide financial information to the OLR and negotiate a payment plan with that agency.

¶48 IT IS ORDERED that the license of Alan D. Eisenberg to practice law in Wisconsin is suspended for a period of two years, effective April 1, 2015.

¶49 IT IS FURTHER ORDERED that within 60 days of the date of this order, Alan D. Eisenberg shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶50 IT IS FURTHER ORDERED that, to the extent he has not already done so, Alan D. Eisenberg shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended or revoked.

¶51 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(3).