IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Larry J. RATZEL, Attorney at Law.†

Supreme Court

*No. 97–0197–D. Submitted on briefs May 5, 1998.—Decided
May 27, 1998.*

(Also reported in 578 N.W.2d 194.)

†Motion for reconsideration denied June 25, 1998.

For Larry J. Ratzel the cause was submitted on the briefs of *Larry J. Ratzel*, New Berlin.

For the Board of Attorneys Professional Responsibility the cause was submitted on the brief by *Robert G. Krohn* and *Roethe, Krohn & Pope*, Edgerton.

¶ 1. PER CURIAM. Attorney Larry J. Ratzel appealed from the referee's report concluding that he engaged in professional misconduct in the course of two matters and recommending that the court suspend Attorney Ratzel's license for two years as discipline for that misconduct. The Board of Attorneys Professional Responsibility (Board) cross-appealed from the referee's recommendation of discipline, taking the position that Attorney Ratzel's disciplinary history and the seriousness of his misconduct established in this proceeding warrant the revocation of his license to practice law.

¶ 2. The referee concluded that Attorney Ratzel engaged in professional misconduct in an estate matter by representing several clients with interests adverse to each other and to a former client and using information related to the representation of that former client to his disadvantage, by disobeying a court order to refrain from any further representation in that estate matter, by failing to keep a client advised of the potential value of the client's claim against the estate and notify the client that Attorney Ratzel had received funds in which the client had an interest, by participating in a court hearing while his license to practice law

was suspended, by failing to notify two clients of the disciplinary license suspension and misrepresenting to the Board that he had complied with the notification requirements applicable to the suspension, and by misrepresenting to the Board that he had not been present at a court hearing and participated in negotiations and the preparation and filing of briefs. The referee also concluded that Attorney Ratzel engaged in professional misconduct in another matter by representing a client whose interests were materially adverse to those of a former client he had represented in the same matter.

¶ 3. We determine that the referee's conclusions in respect to Attorney Ratzel's professional misconduct were properly drawn from the evidence presented. We also determine that the two-year license suspension recommended by the referee is the appropriate disciplinary response to the seriousness of Attorney Ratzel's professional misconduct in these matters, viewed in light of the fact that this is the fourth occasion we have had to discipline him for professional misconduct.

¶ 4. Attorney Ratzel is 77 years old and was licensed to practice law in 1950 and practices in New Berlin. He has been disciplined three times for professional misconduct. In 1982, the court publicly reprimanded him for failing to file an answer to a cross-claim, which resulted in a default judgment against his client, and failing to communicate with his client concerning his negotiations with an insurer in a personal injury matter. *Disciplinary Proceedings Against Ratzel*, 108 Wis. 2d 447, 321 N.W.2d 543. In 1983, the court suspended his license for two months for failure to file a motion to set aside a default judgment within a reasonable period of time and failure to inform his client of the decision of the appellate court, despite repeated requests for information from that client. *Dis-*

*ciplinary Proceedings Against Ratzel*, 112 Wis. 2d 646, 334 N.W.2d 102. In 1992, the court suspended his license for five months, commencing September 1, 1992, as discipline for filing actions, asserting positions, and conducting defenses on behalf of a client when he knew that such actions would serve merely to harass or maliciously injure an adverse party, knowingly advancing claims unwarranted under law, and making false statements of law or fact to a court. *Disciplinary Proceedings Against Ratzel*, 170 Wis. 2d 121, 487 N.W.2d 38.

¶ 5. On the basis of admitted facts and evidence presented at a disciplinary hearing, the referee in this proceeding, Attorney Charles Herro, made the following findings of fact and conclusions of law concerning Attorney Ratzel's conduct. As asserted in Attorney Ratzel's brief in this appeal, the material facts are not in dispute.

¶ 6. A client Attorney Ratzel had represented for several years died January 31, 1990. In May, 1974, Attorney Ratzel had drafted and witnessed the client's assignment of his interest in certain Las Vegas properties to his daughter and his son. Attorney Ratzel also drafted and witnessed the client's will designating the client's daughter as sole beneficiary and personal representative of the estate.

¶ 7. Shortly after the client's death, his daughter told Attorney Ratzel she was not retaining him to probate the estate. In early March, 1990, after the daughter filed a petition to admit her father's will to probate, Attorney Ratzel met with the client's mother and had her execute an agreement he had prepared retaining him to represent her in claims against her granddaughter, both in her individual capacity and as sole heir and personal representative of the estate.

That agreement also mentioned a claim regarding the Las Vegas properties that were the subject of the 1974 assignment.

¶ 8. Toward the end of May, 1990, Attorney Ratzel filed four separate claims totaling almost $450,000 against the estate for advances and credits the client's mother had given her son during his life. Attorney Ratzel also filed eight claims against the estate on behalf of six other claimants. In April, 1991, the personal representative asked the probate court to disqualify Attorney Ratzel from representing the claimants on the ground that his prior representation of the decedent created a conflict. The court took no action on the motion.

¶ 9. In January, 1992, the personal representative filed a general inventory showing the net value of the estate at approximately $146,000. Neither that inventory nor the interim final account filed in November, 1992 included the Las Vegas properties for the reason that the personal representative believed her father had assigned them to her and her brother prior to his death. Attorney Ratzel did not file an objection to the inventory and raised no question concerning the assignment of the Las Vegas properties, although he was aware of the assignment.

¶ 10. The mother's claims against the estate were tried in May, 1992 and the court, in September, 1992, held in favor of the mother on three claims and awarded her approximately $397,000. In late 1992, Attorney Ratzel suggested that the personal representative resign, as there were no longer any assets in the estate by virtue of the award to the decedent's mother.

¶ 11. While those claims were being litigated, Attorney Ratzel's license to practice law was suspended for five months, commencing September 1,

1992, and another attorney was substituted as counsel for the mother. Notwithstanding the suspension, Attorney Ratzel was present in court during the hearing held September 25, 1992 and had discussions with the substituted attorney before and after that hearing. He also reviewed the judgment that was prepared following the court's decision and was present when the personal representative's attorney delivered a quitclaim deed for a portion of the decedent's property to the mother's attorney pursuant to that decision.

¶ 12. Attorney Ratzel did not notify in writing two of the other claimants he was representing that his license had been suspended and did not notify one of those claimants, who was the decedent's brother, that he would have to obtain other counsel to represent him. Yet, in the affidavit of compliance he submitted to the Board September 14, 1992, Attorney Ratzel stated that he had notified all clients whose matters were pending that his license had been suspended and that he had executed and filed substitutions of counsel in all matters pending before a court. In fact, substitutions had not been submitted in respect to the six persons on whose behalf he had filed claims against the estate.

¶ 13. In late 1992, the decedent's daughter resigned as personal representative, and in February of 1993, at the suggestion of Attorney Ratzel, the decedent's brother was named successor personal representative. The brother then retained Attorney Ratzel to represent him. At the same time, Attorney Ratzel continued to represent all of the claimants who had filed in the estate, including the decedent's mother and the successor personal representative. He did not obtain written consents from any of them for such multiple representations.

¶ 14. When the successor personal representative filed a supplemental general inventory, it included the Las Vegas properties as assets of the estate. The personal representative claimed that the decedent never had conveyed or intended to convey the Las Vegas properties to his daughter, and litigation commenced the following year. In that litigation, the daughter requested that Attorney Ratzel be disqualified as counsel for the personal representative because of the adverse interests he represented by virtue of having drafted and witnessed the assignment of the Las Vegas properties to her. Attorney Ratzel opposed that motion, contending that his representations of the estate and of the various claimants were not adverse to his prior representation of the decedent and were not adverse to each other. On July 11, 1994, the probate court disqualified Attorney Ratzel as counsel for the personal representative and prohibited him from having further representation in any matter subsequently involving the probate proceedings, having determined that Attorney Ratzel's various representations in the estate "flew squarely in the face" of the rule of professional conduct prohibiting an attorney from acting in the presence of conflicting interests.

¶ 15. Notwithstanding that court order, Attorney Ratzel continued to represent the various claimants in the estate. In 1995 and 1996, he negotiated a settlement of the claims of two of those persons and secured the release of those claims on behalf of the estate. Also, while the decedent's mother had retained new counsel to represent her, Attorney Ratzel remained closely involved in her representation by, among other things, attending meetings and drafting pleadings and briefs that the new attorney signed and submitted. Attorney Ratzel also continued to give legal advice to and per-

form legal services for the personal representative and the successor attorney retained to represent him: he continued to meet with the personal representative regarding estate matters and sent the successor attorney numerous memoranda between November 1995 and February 1996 concerning the claims against the estate, settlement strategies, and how to close the estate.

¶ 16. Although he knew in 1995 that the personal representative was attempting to include the Las Vegas properties in the estate and that, if successful, the value of the estate would increase by almost $200,000, Attorney Ratzel continued to tell two of the claimants he represented that the estate was virtually worthless. In July, 1995, he negotiated the release of one of those claims for $3500, which he deposited into his trust account. That client agreed to take back a $2000 loan and to have the $3500 applied to fees for prior legal services Attorney Ratzel had provided him. Some time thereafter, Attorney Ratzel disbursed the $3500 to himself.

¶ 17. Also in July, 1995, Attorney Ratzel negotiated the release of the claim of another of his clients. The client testified that Attorney Ratzel told him he might be paid later and that a portion of his claim would remain open. On July 24, 1995, the personal representative gave Attorney Ratzel an estate check for $5000 payable to Attorney Ratzel's client trust account in exchange for the release of that client's claim. The client did not learn that Attorney Ratzel had received those funds until April, 1996, when he telephoned Attorney Ratzel after being interviewed by the investigator to whom the Board had assigned the grievance against Attorney Ratzel. Attorney Ratzel did not disburse the $5000 to the client.

¶ 18. In the course of the Board's investigation into his conduct in the estate matter, Attorney Ratzel stated in a letter to the Board that he was not "present" during the September 25, 1992 probate court hearing. He also told the district committee investigator that it was "totally inaccurate" that he had negotiated the release of two claims against the estate with the estate's attorney. Contrary to that assertion, the two clients confirmed his participation in the negotiations, and Attorney Ratzel admitted having received the two settlement checks and depositing them into his trust account. Attorney Ratzel also told the committee investigator that it was "totally inaccurate" that he had written briefs that were signed by the attorney for the decedent's mother.

¶ 19. On the basis of those facts, the referee concluded that Attorney Ratzel engaged in the following professional misconduct. His simultaneous representation of the personal representative and various claimants against the estate, knowing the estate's assets were less than the amount claimed by the various parties he represented and having been involved in the decedent's business and personal affairs, including the drafting of the will that was being probated and the assignment of properties that he later attacked as a fraudulent conveyance, violated SCR 20:1.7(a)[1] and 1.9(a) and (b),[2] as the representation of several clients

[1] SCR 20:1.7 provides, in pertinent part:

**Conflict of interest: general rule.**
 (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
 (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
 (2) each client consents in writing after consultation.

[2] SCR 20:1.9 provides:

431

with adverse interests to each other and to a former client in a substantially related matter and the use of information related to the representation of a former client to his disadvantage. By disobeying the court's order to refrain from any further representations in the litigation surrounding the estate, Attorney Ratzel violated SCR 20:3.4(c).[3] His failure to keep one of the claimants advised of the potential collection value of his claim and notify that client of his receipt of funds in which the client had an interest violated SCR 20:1.4(b).[4] Attorney Ratzel engaged in the practice of law while his license was suspended, in violation of

**Conflict of interest: former client**

A lawyer who has formerly represented a client in a matter shall not:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

[3] SCR 20:3.4 provides, in pertinent part:

**Fairness to opposing party and counsel**

A lawyer shall not:

. . .

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

[4] SCR 20:1.4 provides, in pertinent part:

**Communication**

. . .

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

SCR 20:5.5(a)[5] and 22.26(2),[6] by participating in a court hearing, reviewing the judgment, and being present when the quitclaim deed was delivered. His failure to send written notice to two of his clients regarding his disciplinary suspension, file the requisite substitution of attorney documents on behalf of the claimants he was representing, and file a truthful affidavit with the Board concerning his compliance with the notification requirements violated SCR 22.26(1).[7]

---

[5] SCR 20:5.5 provides, in pertinent part:

**Unauthorized practice of law**
A lawyer shall not:
(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction;

[6] SCR 22.26 provides, in pertinent part:

**Activities on revocation or suspension of license.**
. . .
(2) A suspended or disbarred attorney may not engage in the practice of law or in any law work activity customarily done by law students, law clerks or other paralegal personnel, except that he or she may engage in law related work for a commercial employer not itself engaged in the practice of law.

[7] SCR 22.26 provides, in pertinent part:

**Activities on revocation or suspension of license.**
(1) (a) A disbarred or suspended attorney on or before the effective date of disbarment or suspension shall:
1. Notify, by certified mail, all clients being represented in pending matters of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension.
2. Advise the clients to seek legal advice of the client's own choice elsewhere.
(b) A disbarred or suspended attorney with a matter pending before a court or administrative agency shall promptly notify the court or administrative agency and the attorney for each party of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension. The notice must identify the successor attorney or, if there is none

His misrepresentation in the affidavit of compliance he filed with the Supreme Court's Board violated SCR 20:3.3(a)(1).[8] His misrepresentations to the Board that he had not been present at the court hearing and his denial of having participated in negotiations in the estate matters and in the preparation or filing of briefs violated SCR 20:8.1(a)[9] and 8.4(c)[10] and 22.07(2).[11]

at the time of the notice, state the place of residence of the client of the disbarred or suspended attorney.

[8] SCR 20:3.3 provides, in pertinent part:

**Candor toward the tribunal**
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal;

[9] SCR 20:8.1 provides, in pertinent part:

**Bar admission and disciplinary matters**
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact;

[10] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:
. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

[11] SCR 22.07 provides, in pertinent part:

**Investigation.**
. . .
(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

434

¶ 20. In an unrelated matter, the referee concluded that Attorney Ratzel represented a client whose interests were materially adverse to those of a former client in the same matter, in violation of SCR 20:1.9(a). There, a representative of a real estate company discussed with Attorney Ratzel in early October, 1995 a problem the company was having with a former employee, who had taken files and other documents with him when he left employment. Attorney Ratzel first told the representative that he did not want to get involved but eventually agreed that he would contact the former employee. The representative then gave him a list of the files the company was seeking to recover.

¶ 21. On or about November 1, 1995, Attorney Ratzel telephoned the former employee, identified himself as "Attorney Larry Ratzel," and said he was doing the company representative a favor by asking whether the former employee was going to keep the files or return them. The former employee replied that he would probably return the files by a specified date. Attorney Ratzel related that conversation to the company representative, who said he doubted the former employee would do as he said. When asked what else he intended to do, Attorney Ratzel said he would not render any additional assistance in the matter.

¶ 22. Some time in early November, the realty company retained an attorney to recover the files from the former employee, and an action was filed requesting, among other things, that a receiver be appointed to take possession of the files in question and that an injunction issue against the former employee. Upon receiving the complaint in that action, the former employee called Attorney Ratzel and asked if he would represent him. After reviewing the complaint, Attor-

435

ney Ratzel agreed to do so and then filed a memorandum in opposition to the appointment of a receiver and appeared on behalf of the former employee at a show cause hearing regarding the restraining order and injunction. On the day of that hearing, the realty company wrote Attorney Ratzel that it did not consent to his representation of the former employee and demanded that he withdraw.

¶ 23. As discipline for his misconduct in these matters, the referee recommended that Attorney Ratzel's license to practice law be suspended for two years, not the license revocation the Board had sought. Noting that in his responsive pleadings and in his testimony Attorney Ratzel had admitted a substantial portion of the allegations of the complaint, the referee said:

> However, his acknowledgment and admissions are then subject to his interpretation and together with his definition of his activities, as supported by case law he cites, he arrives at a conclusion that he has in no way violated any Supreme Court Rule. The Referee finds the reasoning contorted. This argument by the Respondent is without substance; it is unsound and is a flimsy excuse for his actions. Notwithstanding, the Respondent did so testify under oath and has filed his memorandum brief in support of his position. He may well believe his argument for reasons not elicited; including his age, the many years of practice and location of his practice.

¶ 24. In this appeal, Attorney Ratzel first argued that the referee's conclusion that he acted in the presence of conflicting interests by representing the decedent's mother and other claimants in the estate matter was improper for the reason that the assignment of the Las Vegas properties did not in fact

436

transfer the decedent's interest to his daughter and son and, consequently, that property was an asset of the estate and continued to serve as collateral for notes the decedent had outstanding at the time of his death. Attorney Ratzel asserted that what he termed the "purported assignment" was merely a device to place the Las Vegas properties beyond the reach of creditors and, as such, amounted to a fraudulent conveyance. He insisted that he did not act in the presence of interests conflicting with either those of the daughter acting as personal representative or in her own capacity or with the decedent's, as the daughter did not have a valid claim in the Las Vegas properties by virtue of the assignment. On the same basis, he contended that his representation of the decedent's brother as successor personal representative in seeking to include those properties as an estate asset did not conflict with his representation of other claimants in the estate or with the interests of the decedent.

¶ 25. We find no merit to that argument, as the validity of the assignment of the properties is immaterial to the issue of whether Attorney Ratzel's representation of the decedent's mother and of the other claimants was in conflict with the interests of a former client from whom he had obtained information not only concerning the properties and the basis for the mother's claims against the estate but also in respect to his former client's intentions regarding the disposition of his estate following his death.

¶ 26. Moreover, as the referee repeatedly cautioned Attorney Ratzel in the course of the disciplinary hearing, the validity of the assignment of the properties was not at issue in this proceeding. The referee sustained each of the Board's numerous objections to

his attempts to present evidence on and argue the merits of that issue.

¶ 27. On the issue of whether the referee properly concluded that he engaged in the practice of law while his license was suspended, Attorney Ratzel contended that as he did not "represent" anyone in the matter at the time of the hearing on the mother's claims, he was not "present" and, therefore, his statement to that effect to the Board was not a misrepresentation. Further, he argued that in order to have been engaged in the practice of law at the time of that hearing, he would have had to be "representing" a client, and that representation would be evidenced by an "appearance" in the matter. He made the same argument in support of his contention that he did not violate the probate court's order that he refrain from further representation in the estate matter in any respect.

¶ 28. Attorney Ratzel's limited view of what constitutes engaging in the practice of law is unsupportable. The record demonstrates that he offered legal research, advice, and legal opinions to a party in respect to a number of issues in the estate litigation. Also, he prepared releases and obtained receipts on behalf of two claimants he represented in the estate, and the estate's payments made to those claimants went to and were deposited in Attorney Ratzel's client trust account.

¶ 29. In respect to the real estate company matter, Attorney Ratzel argued that the telephone call he made to the employee at the request of the company's representative was "gratuitous" and specifically limited to repeating the demands for the return of the files that already had been made. That, he asserted, did not constitute representation of the company with which

his subsequent representation of the employee would conflict. In support of his position, Attorney Ratzel pointed out that there was no litigation pending between the company and its employee when he telephoned the employee. He asserted further that no substitution of attorneys was required or sought when the company hired other counsel to commence an action, no one complained to the court of any conflict of interests in his representation of the employee, and he withdrew as counsel prior to any hearing on the merits of the litigation.

¶ 30. None of those arguments has merit. It was uncontroverted that following the telephone call he made to the employee to request the return of company files, Attorney Ratzel went to see the former employee to obtain his agreement for their return. Attorney Ratzel's eventual withdrawal from representation of the employee in the litigation neither prevented nor excused his professional misconduct in accepting and pursuing that representation.

¶ 31. Having determined that there is no merit to any of Attorney Ratzel's arguments in support of his contentions that the referee's conclusions regarding Attorney Ratzel's professional misconduct in these matters were improper, we adopt those conclusions and the findings of fact on which they are based. We turn then to the issue of what constitutes appropriate discipline to impose for that professional misconduct.

¶ 32. Attorney Ratzel took no position on the issue of discipline, arguing that the referee's conclusions should be reversed and the Board's complaint dismissed on the merits. In its cross-appeal, the Board contended that the seriousness of Attorney Ratzel's misconduct in the two matters considered in this proceeding, aggravated by the fact that he has been

disciplined three times for other professional misconduct, warrants the revocation of his license. In support of that contention, the Board noted Attorney Ratzel's continuous refusal to comply with the conflict of interests rules and with court orders—that of the probate court and this court's license suspension order. In addition, the Board asserted, Attorney Ratzel repeatedly has demonstrated an unwillingness to accept any responsibility for his conduct, as evidenced by his belabored arguments to justify his actions.

¶ 33. We agree that by his disciplinary history Attorney Ratzel has established a marked willingness and disturbing propensity to ignore the ethical constraints we impose on attorneys when it suits his purposes. Also of concern is his resort to tortured semantics to justify his misconduct and evade responsibility for it. Yet, taking into consideration his age and his assertion in the course of this proceeding that he no longer is actively practicing law, we determine that the license suspension recommended by the referee is adequate to protect the public, the legal profession, and the courts from his further misconduct and to serve as a deterrent to others who would act similarly.

¶ 34. IT IS ORDERED that the license of Larry J. Ratzel to practice law in Wisconsin is suspended for a period of two years, effective July 7, 1998.

¶ 35. IT IS FURTHER ORDERED that within 60 days of the date of this order, Larry J. Ratzel pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Larry J. Ratzel to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 36. IT IS FURTHER ORDERED that Larry J. Ratzel comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.