No. 58          December 30, 2025          683

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of

ANNE-MARIE W. CLARK
OSB No. 110900,
*Respondent.*

(OSB 23322) (SC S071725)

En Banc

On review of the decision of a trial panel of the Disciplinary Board.*

Argued and submitted September 19, 2025.

Amber Bevacqua-Lynott, Buchalter, P.C., Portland, argued the cause and filed the briefs for respondent.

Susan Cournoyer, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief on behalf of the Oregon State Bar.

PER CURIAM

The complaint is dismissed.

_____
    * Trial panel opinion dated January 10, 2025.

**PER CURIAM**

The Oregon State Bar charged respondent with knowingly disobeying a court order, in violation of Rule of Professional Conduct (RPC) 3.4(c). That rule provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." The dispute centers around a verbal order that a trial court judge gave to respondent at a hearing in July 2016. At the time, respondent was serving as trustee of a special needs trust intended to benefit her cousin, Allen, who has an intellectual disability. The Bar contends that, at the conclusion of the hearing, the judge verbally ordered respondent to electronically deposit $20 per month into Allen's bank account. Respondent failed to do so. That failure is the basis for the Bar's charge that respondent knowingly disobeyed a court order in violation of RPC 3.4(c).

Respondent contends that a knowing violation of a verbal court order falls outside the scope of RPC 3.4(c). Alternatively, as a factual matter, although she agrees that she did not provide Allen with $20 per month, she denies that the judge ordered her to do so. Instead, she contends that the order addressed only the method that she should use to make cash distributions to Allen—namely, that, when she distributes funds to Allen, she should use electronic deposit rather than written checks. Respondent further maintains that, even if the judge ordered her to provide Allen with $20 per month, any violation of that order was not done knowingly, because she did not understand the judge to have ordered her to do so.

A divided trial panel of the Disciplinary Board agreed with the Bar, with one member dissenting. Reviewing the matter *de novo*, we conclude that the Bar failed to establish the violation by clear and convincing evidence.

A.   *Interpretation of RPC 3.4(c)*

Although the dispute in this case is primarily factual, we address respondent's legal argument first. As noted above, respondent contends that a knowing violation of a *verbal* court order falls outside the scope of RPC 3.4(c),

which provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." The phrase "obligation under the rules of a tribunal" refers to court rules as well as court rulings, including orders.[1] Respondent agrees that the rule applies to court orders, but she argues that it applies only to written court orders, because a verbal order is usually not appealable and may be modified by the trial court before being reduced to a written order.

We reject respondent's interpretation and hold that RPC 3.4(c) prohibits knowingly disobeying both written and verbal court orders. The text of the rule does not distinguish between written and verbal orders. And applying the rule to both better carries out the intent behind the rule. The title of RPC 3.4, as adopted by this court, is "Fairness to Opposing Party and Counsel." *See Weldon v. Bd. of Lic. Pro. Counselors and Therapists*, 353 Or 85, 96-97, 293 P3d 1023 (2012) (explaining that the title of an act "may offer interpretive assistance" when it is part of the bill that the legislature adopts). The rule, including paragraph (c), is intended to provide broad protection to opposing parties, and their lawyers, against abusive litigation tactics. *See* American Bar Association, *Model Rule of Professional Conduct* 3.4 comment 1 ("Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like."). When a judge orders a lawyer to do something or not do something, the opposing party and their lawyer should expect the lawyer to

---

[1] The text of RPC 3.4(c) tracks the American Bar Association's Model Rule of Professional Conduct (Model RPC) 3.4(c). Our interpretation of that rule may be informed by decisions from other jurisdictions applying the same model rule prior to our adoption. *Cf. State v. Hubbell*, 371 Or 340, 354, 537 P3d 503 (2023) ("When the legislature adopts a uniform act, the context of the statute includes the uniform act, its official commentary, and interpretations from other jurisdictions that existed at the time of enactment of the Oregon law."). By the time Oregon adopted RPC 3.4(c) at the end of 2004, numerous jurisdictions had already applied similar rules, also drawn from Model RPC 3.4(c), to lawyers who knowingly violated court orders. *See State ex rel. Oklahoma Bar Ass'n v. Braswell*, 975 P2d 401, 408 (Okla 1998) (applying rule to court order); *Disciplinary Proceedings Against Ratzel*, 218 Wis 2d 423, 432, 578 NW2d 194, 198 (1998) (same); *Attorney Grievance Comm'n v. Mininsohn*, 380 Md 536, 569-70, 846 A2d 353, 373 (Md Ct App 2004) (same).

comply with the order and should not be required to return to court to enforce it. That is true whether the judge's order is written or verbal. *See, e.g.*, *Ligon v. Stilley*, 2010 Ark 418, 26-27, 104, 371 SW3d 615, 645, 673 (2010) (finding a violation of Rule 3.4(c) where a lawyer issued subpoenas and deposition notices after the trial court judge orally directed the lawyer not to do so).

Although knowingly disobeying a verbal order may support a violation of RPC 3.4(c), the order must be sufficiently clear in its direction to the lawyer to be knowingly disobeyed. A lawyer does not knowingly disobey a court order by merely misunderstanding what the court has ordered. The scope of a court's order, and a lawyer's understanding of that scope, are questions of fact. We now turn to those questions of fact in this case.

B. *Factual Disputes*

A divided trial panel of the Disciplinary Board found that the Bar established that respondent violated RPC 3.4(c) by knowingly violating a court order. We review the trial panel's decision *de novo* and may adopt, modify, or reject the decision of the trial panel. ORS 9.536(2); Bar Rule of Procedure (BR) 10.6. "On *de novo* review, this court sits as factfinder based on the record developed by the trial panel" to determine whether the Bar has proved each violation by clear and convincing evidence. *In re Munn*, 372 Or 589, 591 n 1, 553 P3d 1039 (2024); *see also* BR 5.2 (establishing clear and convincing evidence standard). Evidence is clear and convincing when "the truth of the facts asserted is highly probable." *In re Gregory Mark Abel*, 374 Or 350, 357, 577 P3d 777 (2025) (internal quotation marks omitted). Of the facts that the Bar must prove by clear and convincing evidence, the parties dispute whether the trial judge ordered respondent to provide her cousin with $20 per month and, if so, whether respondent understood the trial judge to have done so.

1. *The record*

The disputed court order was issued verbally at the conclusion of a July 2016 hearing on Allen's petition to remove respondent as trustee of a special needs trust. The

trust had been established by respondent's aunt, Allen's mother, upon her death. When her mother died in 2010, Allen was in her mid-40s. She had an intellectual disability but was living independently and managed her own limited finances. Her income consisted only of government benefits, which included about $730 per month in Supplemental Security Income (SSI). The trust documents instruct the trustee to consider, and generally attempt to minimize, the extent to which trust distributions to Allen would reduce her government benefits.

Respondent became the trustee in 2011 upon the resignation of the first co-trustees, respondent's parents. Respondent made no distributions from the trust to Allen in the first three years that she served as trustee because of what she described as communication challenges with Allen, who did not trust respondent and generally avoided direct communication with her. In 2014, Allen retained counsel, Mayor, to facilitate trust distributions. Mayor requested that respondent provide Allen with $20 checks per month, plus an additional $60 per quarter. Mayor explained that any cash distributions above that amount would reduce Allen's SSI benefits. Respondent complied and began sending those checks to Mayor.

In April 2015, Mayor filed a petition to remove respondent as trustee.[2] The petition argued that respondent should be removed as trustee because she had limited experience in trust administration and Allen lacked confidence in her. While that petition was pending, respondent used trust funds to purchase dining room chairs for Allen at Mayor's request and suggested to Mayor that she also use trust funds to pay for Allen's rent. Although respondent estimated that paying for Allen's rent would reduce her SSI benefits by about $250 per month, that loss would be more than offset by the fact that Allen would no longer have to use her SSI benefits to pay the rent, which was about $625 per month. Mayor agreed. In September 2015, respondent began sending checks from the trust to Mayor to cover Allen's rent.

_____

[2] The petition also sought to compel both respondent and her parents to provide an accounting of trust assets from the time each served as trustees. The questions related to the accounting are not relevant to the issues presented in this case, and we do not discuss them further.

        The trial court scheduled a hearing on Allen's petition to remove respondent as trustee. Prior to the hearing, Mayor withdrew his representation of Allen. As a result, respondent began sending the regular trust distributions—$20 per month and $60 per quarter—by check directly to Allen and began sending the $625 per month rent checks directly to Allen's landlord. Allen did not cash or deposit the checks that respondent sent directly to her.

        The trial court held a hearing on the petition in July 2016. That is the hearing at which the trial court issued the verbal order in dispute in this case. At the hearing, respondent was represented by counsel, Mishkin, and Allen represented herself. The trial court judge took evidence and testimony and declined to remove respondent as trustee.

        After making that ruling, the judge used most of the remainder of the hearing to address some of Allen's specific objections to respondent's performance as trustee. Allen primarily objected to respondent paying her rent. Allen saw that, once respondent had started paying her rent, her SSI checks were smaller. Allen preferred the larger SSI checks and complained that the $20 per month checks from respondent did not make up the difference. She stated repeatedly that she did not want the trust to pay her rent or send her $20. The judge tried to explain to Allen that she was better off financially when respondent paid the rent because then Allen did not need to use her SSI checks to pay the rent.

        As they were nearing the end of the hearing, respondent's counsel, Mishkin, asked the judge if they could address a couple of other issues, while Allen was present, because they had struggled to communicate effectively with her outside the context of a judicial proceeding. One of the issues was that Allen had failed to deposit the checks that respondent had previously sent directly to Allen, after her counsel withdrew. Respondent asked whether she could use direct deposit to make the cash distributions and wanted to get Allen's bank account information. Allen confirmed that she had been using the same bank account for years but objected to respondent sending her $20. The judge explained to Allen that, if respondent used direct deposit to send her $20 per month, then the $20 would be there in her account,

and she could use it however she wanted. Allen replied, "$20 is not going to get me anywhere a month in my house." When respondent asked whether she could direct deposit the distributions to her account, Allen said, "I'll think about it."

Following that discussion, the judge said, "[W]e might want to order that's how it's happening." The following exchange occurred with the judge while Allen, respondent, and Mishkin were all present in the courtroom:

"THE COURT:  I'm going to instruct you to—

"[RESPONDENT]:  And can I make one more suggestion?

"THE COURT:  Yeah. But I'm going to first instruct you to—

"[RESPONDENT]:  If you—

"THE COURT:  —direct-deposit into that account, unless or until it shows that it's not going there because there's no longer the account. So that is how you're to do it, okay.

"[RESPONDENT]:  Oh, okay. Okay.

"THE COURT:  Go ahead. Ask your question.

"[RESPONDENT]:  Direct—I will deposit it into her account myself.

"MR. MISHKIN:  Uh-huh (affirmative).

"[RESPONDENT]:  Yeah, okay.

"MR. MISHKIN:  Yeah. They wire it in.

"[RESPONDENT]:  And I could buy her items—not just pay utility bills or monthly bills, but if she says a—I want a vacuum cleaner, or I need a table to go with the chairs, or I need a new mattress."

After the hearing, respondent stopped making any monthly cash distributions to Allen, either through checks or direct deposit, although respondent still paid for Allen's rent from the trust. According to respondent, she stopped making the monthly distributions because Allen had said that she did not want them and because respondent did not understand the judge to have ordered her to provide them.

Instead, respondent maintains that the judge's verbal order addressed only the method for distributing cash; specifically, authorizing and directing respondent to make any cash distributions through direct deposit.

The trial court's resolution of the 2016 hearing was never memorialized in a written order. Two months after the hearing, Mishkin prepared a proposed written order based on his own notes from the hearing. Mishkin's draft order reflected respondent's understanding that the judge's order addressed the method of distribution and not the amount or frequency of distribution. The relevant part of the draft proposed order stated:

> "If and when the current Trustee, Anne-Marie Clark, receives bank account routing and account number information from [Allen], the current Trustee, Anne-Marie Clark, shall electronically deposit all cash disbursements due to [Allen] to such bank account."

Mishkin served a notice of proposed order on Allen, as required under UTCR 5.100. Mishkin asked Allen to either contact him if she objected to the draft proposed order or to contact the trial court directly.

Soon after receiving the notice, Allen retained new counsel, Seeger. Seeger contacted Mishkin and objected to the proposed order, though she did not object that the order failed to compel respondent to provide $20 per month or that the order otherwise failed to reflect the judge's rulings at the July 2016 hearing. Instead, Seeger objected to respondent continuing to serve as trustee.

Mishkin did not submit the proposed order to the court until almost two years after the hearing. During those two years, neither Allen nor Seeger suggested that respondent should be providing $20 per month distributions. Seeger requested one-time cash distributions for Allen on three different occasions. Each time, respondent provided cash distributions through direct deposit. After the third time, respondent told Seeger that she could not continue to provide cash distributions without additional information about Allen's finances and benefits. Seeger did not make further requests for cash distributions.

Mishkin finally submitted the proposed order in May 2018. Seeger filed objections and a motion to hold respondent in contempt, raising for the first time the allegation that respondent had been disobeying a court order by failing to provide Allen with $20 per month. After another hearing, Seeger submitted her own proposed order that would have required respondent to provide $20 per month. Respondent objected through Mishkin, noting that such a requirement had never been requested by Allen, argued by the parties, or ordered by the court at the July 2016 hearing.

Following other filings and more hearings, respondent stipulated to the appointment of an interim trustee. The trial court appointed an interim trustee and ordered the trustee to provide Allen with $20 per month from the trust. Respondent ultimately agreed to the appointment of a new permanent trustee as part of a settlement to resolve claims that Allen had brought against her.

At around the same time that the trial court appointed an interim trustee, Seeger filed a Bar complaint raising numerous allegations against respondent. Based on those allegations, the Bar brought the charge at issue in this case—that respondent had violated RPC 3.4(c) by knowingly disobeying a court order when she stopped providing Allen with monthly $20 distributions.[3]

Before a trial panel of the Disciplinary Board, the trial court judge who had issued the verbal order testified that she had intended her order to compel respondent to deposit $20 per month into Allen's account, though she acknowledged both that her order did "not say that in one fell swoop" and that Allen had not requested $20 per month.

Respondent and Mishkin both testified that they did not understand the judge to have ordered respondent to make specific distributions. Instead, respondent testified that the judge's verbal order authorized and directed her to make any cash distributions through direct deposit. Respondent said that she did not understand the order to

_____

[3] The Bar brought two other charges against respondent based on Seeger's allegations. The trial panel found that the Bar did not prove those other charges by clear and convincing evidence, and the Bar has not sought review of those decisions.

limit her discretion as trustee to determine how best to provide for Allen, while both maintaining Allen's access to government benefits and preserving the trust assets. Respondent testified that she did not think that the $20 per month distributions were a good use of trust assets, because respondent was already using trust funds to pay for Allen's rent and because Allen repeatedly stated she did not want $20 per month distributions.

Mishkin testified consistently with respondent. He said that he had understood the judge's order to have resolved whether distributions would be made through electronic transfer or paper checks. But, according to him, the order did not address the frequency or amount of the distributions, which Mishkin understood to be within the discretion of the trustee, respondent.

A majority of the trial panel concluded that respondent had violated RPC 3.4(c), finding both that the trial court judge had ordered respondent to distribute $20 per month to Allen and that respondent had knowingly disobeyed that order. The majority interpreted the order as resolving a hearing at which Allen sought additional cash distributions, and the majority determined that respondent had acknowledged that order at the hearing. Based on that violation RPC 3.4(c), the trial panel imposed a sanction of public reprimand.

One member of the trial panel dissented from the conclusion that respondent had knowingly disobeyed the judge's order. The dissenting member noted that the transcript from the hearing was "confusing" and that Allen's "interactions with the judge broke up any continuous exposition of any potential oral order." Even if the judge had ordered respondent to make $20 per month distributions, the dissenting member would have found that the Bar failed to prove by clear and convincing evidence that respondent had knowingly disobeyed the order. The dissenting member explained that, because of "the disorganized nature of the hearing," it was not surprising that people might leave the hearing with different views on the scope of the order. The dissenting member also noted that Mishkin shared respondent's interpretation of the order and that their conduct

following the hearing was consistent with that interpretation. Respondent petitioned this court to review the trial panel's decision.

2. *Whether respondent knowingly disobeyed a court order*

As noted above, the Bar bears the burden of proving a violation by clear and convincing evidence. BR 5.2. Reviewing the matter *de novo*, we agree with respondent and the dissenting member of the trial panel and conclude that the Bar failed to prove a violation of RPC 3.4(c) by clear and convincing evidence.

The Bar's claim depends on establishing that the trial court judge ordered respondent to deposit $20 per month into Allen's bank account and that respondent understood the trial court to have ordered her to do so. As to the scope of the trial court order, the Bar points to the testimony from the trial court judge, who said that she intended her order to require respondent to deposit $20 per month in Allen's bank account.

For our purposes, however, the scope of the order is not determined by the judge's intent, but by the order itself. Based on the transcripts, the trial court ordered,

"I'm going to first instruct you [respondent] to * * * direct-deposit into that account, unless or until it shows that it's not going there because there's no longer the account. So that is how you're to do it, okay."

That order is ambiguous as to whether the judge was directing respondent to continue her current distributions of $20 per month but do so using direct deposit or directing respondent to use direct deposit, rather than checks, for any future distributions that she might make.

The Bar contends that the larger context of the hearing provides clear and convincing support for its interpretation that the trial court ordered respondent to continue her current distributions of $20 per month but to do so using direct deposit. The Bar points out that the order came at the end of a hearing to resolve Allen's claim that respondent should be removed for failing to properly manage

the trust, including failing to provide her with adequate disbursements.

Although that context lends support for the Bar's interpretation, it is not a complete picture of the hearing. To be sure, Allen's petition to remove respondent as trustee, originally filed by Mayor, alleged that respondent had failed to provide Allen with adequate disbursements. But that was not the position that Allen advanced at the hearing. Instead, she said repeatedly that she wanted respondent to stop the disbursements that she was making—both the rent payments and the cash distributions.

Regardless, by the time the court issued its verbal order, the court had already resolved Allen's petition and declined to remove respondent. At that point, the trial court was addressing an issue raised by respondent rather than an issue raised by Allen. The issue that respondent had raised was Allen's failure to deposit written checks and respondent's request to use direct deposit. That is the immediate context in which the judge ordered respondent "to direct-deposit into that account." That more immediate context lends support for respondent's interpretation. At the very least, the overall context of the hearing prevents a finding that the Bar established by clear and convincing evidence that the trial court ordered respondent to continue her current distributions of $20 per month.

Even if the Bar were correct and the trial court judge orally directed respondent to deposit $20 per month in Allen's account, the Bar's claim would still fail because the Bar did not prove by clear and convincing evidence that respondent understood the judge to have so ordered. And without that showing, the Bar cannot prove by clear and convincing evidence that she knowingly disobeyed the order. *See* RPC 3.4(c) (generally prohibiting "knowingly disobey[ing] an obligation under the rules of a tribunal"). "Knowingly" is generally defined to mean "actual knowledge of the fact in question." RPC 1.0(h); *see id.* (constructive knowledge applies only to knowledge of a conflict of interest).

Respondent testified that she did not understand the trial court to have ordered her to make $20 per month

distributions to Allen. "Our case law provides a framework for assessing whether the Bar sufficiently proved that respondent had acted with actual knowledge, when respondent testified to contrary." *Abel*, 374 Or at 359. First, we consider "subjective factors that are observable from the record," such as whether the respondent testified in a manner that was evasive, hyper-technical, or argumentative. *Id.* As part of that determination, we also consider and assess any findings by the trial panel that reflect respondent's manner while testifying. *Id.* Second, we consider "'objective factors, such as the inherent probability or improbability of testimony, whether testimony is internally consistent or inconsistent, whether the testimony is corroborated or contradicted, and so on.'" *Id.* (quoting *In re Fitzhenry*, 343 Or 86, 104, 162 P3d 260 (2007)); *see, e.g.*, *In re Long*, 368 Or 452, 472, 491 P3d 783 (2021) (finding that respondent's testimony was not credible where client's competing version of events better aligned with contemporaneous communications).

In this case, the trial panel did not make any findings about the manner of respondent's testimony that would reflect on her credibility. And our own review of the record does not reveal that respondent testified in an evasive, hyper-technical, or argumentative manner. Further, her testimony—that she did not understand the trial court to have ordered her to provide Allen with $20 per month—is plausible. As noted above, the trial court's verbal order was ambiguous as to whether it was requiring respondent to distribute $20 per month or directing respondent to use direct deposit when distributing cash. Respondent could have plausibly understood the order as addressing only the manner of distributing cash to Allen because that is the issue that respondent raised with the court and was what respondent reasonably would have thought the court was resolving through the order. The plausibility of that interpretation is supported by the fact that Mishkin left the hearing with the same understanding of the trial court's order.

The Bar contends that respondent's statement at the hearing is inconsistent with her testimony that she understood the trial court to be addressing only the manner of distributing cash. In particular, the Bar points out that,

after the trial court's order, respondent stated to the trial court, "I will deposit it into her account myself." The Bar argues that, in the context of the hearing, the "it" in that statement refers to $20 per month distributions. And, as a result, the Bar contends that that statement is an acknowledgment by respondent that the trial court had ordered her to make monthly deposits.

We disagree. Again, the transcript is ambiguous. The "it" in respondent's statement might refer to $20 per month distributions, as the Bar contends, but it could also refer to any future cash distributions that respondent might make to Allen. Even if "it" refers to $20 per month distributions, that statement does not tell us how respondent understood the trial court order. Instead, the meaning of that statement depends on first establishing respondent's understanding of the order. To be sure, if respondent had understood the trial court to order her to provide Allen with $20 per month, then her statement might reflect an acknowledgement of that order. But if respondent had understood the trial court to order her to use direct deposit when distributing cash, then her statement would merely express her intent, in light of that order, to deposit $20 per month or other permissible distribution to Allen by direct deposit. Even if respondent planned to continue the monthly payments at the time of the hearing, that fact would not necessarily mean that she understood the court to have ordered her to do so or to have prevented her from changing her plans after the hearing as permitted by the trust.

Respondent's conduct was otherwise consistent with her stated understanding that the trial court did not order her to provide Allen with $20 per month. The draft order resolving the July 2016 hearing, prepared by respondent's counsel, would have required direct deposit but did not address the amount or frequency of cash distributions. When, nearly two years after the hearing, Seeger first suggested that respondent should be making $20 per month distributions, respondent replied, through counsel, that a $20 per month requirement had never been requested, argued, or ordered.

As noted at the outset, the Bar bears the burden of proving its allegation under RPC 3.4(c) by clear and convincing evidence, BR 5.2, which means that the "truth of the asserted facts must be highly probable." *Abel*, 374 Or at 357 (internal quotation marks omitted). That standard "demands more than merely a suspicion that a particular fact is true." *In re Peterson*, 348 Or 325, 339, 232 P3d 940 (2010) (internal quotation marks omitted). We conclude that the Bar failed to meet that standard. In this case, the Bar failed to establish, by clear and convincing evidence, that either the trial court ordered respondent to prove $20 per month to Allen or that respondent understood the trial court to have done so. Accordingly, we dismiss the Bar's complaint.

The complaint is dismissed.